UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| BRUCE EDGAR SMITH, | 4:16-CV-04014-KES |
| Plaintiff, | |
| vs. | |
| DARIN YOUNG, South Dakota State Warden, individual and official capacity; BOB DOOLEY, South Dakota State Warden, individual and official capacity; SGT. KURTIS BROWN, Correctional Officer, individual and official capacity; JESS BOYSEN, Correctional Officer, individual and official capacity; JUSTIN KUKU, Correctional Officer; ANGELA STEINEKE, Coordinator of West Hall; KEITH DITMENSON, Unit Manager, West Hall; JUDGE JOHN PEKAS, Minnehaha County Circuit Judge; TROY PONTO, Associate Warden; MARTY JACKLEY, Attorney General; EUGENE REGIER, Head doctor of Health Service; HEATHER BOWERS, Head nurse of Health Service; KATIE DUNN, Attorney at Law; JUDGE ROBIN J. HOUWMAN, State of South Dakota Minnehaha County Circuit Court Judge; DOUGLAS P. BARNETT, State Assistant Attorney General; DAVID WATTS, Core Orthopedics Avera; DR. TODD, Midwest ENT; MARC ELLWEIN, Midwest ENT; MARY CARPENTER, Head Doctor for Health Care, LONNA VINK, Nurse Health Services; DENNY KAEMINGK, Secretary of Corrections; DAVID LENSCH, Unit Manager; WILLIAM H. GOLDEN, Assistant Attorney General; DAVID | ORDER GRANTING MOTION TO SUPPLEMENT, GRANTING MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT, DENYING MOTION FOR RECUSAL, DISMISSING COMPLAINT IN PART, AND DIRECTING SERVICE |

STEPHAN, DCI, Division Of Criminal
Investigation;

                    Defendants.

## INTRODUCTION

Plaintiff, Bruce Edgar Smith, is an inmate at the South Dakota State
Penitentiary (SDSP) in Sioux Falls. He filed a pro se civil rights lawsuit under
42 U.S.C. § 1983. Docket 1. Smith now moves to amend and supplement his
complaint. Docket 30; Docket 59; Docket 62. He also moves for recusal. Docket
63. For the reasons below, the court grants Smith's motion to amend and
supplement his complaint, denies his motion for recusal, screens his complaint
under 28 U.S.C. § 1915A, dismisses the complaint in part, and directs service.

## FACTUAL BACKGROUND[1]

The facts as alleged in the complaint are:

### The Incident

Smith's incarceration began in 1998, and since then, he has only been
written up for minor infractions. Docket 1 at 23. He has suffered from bipolar
disorder his whole life. *Id.* at 43. On August 18, 2013, Smith started an
argument with his cellmate, and his cellmate punched him in the face. *Id.* at
23. Smith did not want to fight, so he grabbed his cellmate's wrists and pushed
the button in his cell to call a guard. *Id.* Correctional Officers Jess Boysen and
Justin Kuku responded. *Id.* They took Smith's cellmate away. *Id.* Smith

---

[1] Smith's factual allegations are confusing and not linear. As a result, it is not
clear when things happened and in what order. The court relays the facts to
the best of its abilities.

discussed what had happened with Kuku, and they decided Smith should go to the West Hall holding cell and then receive medical attention. *Id.*

When Smith and Kuku began walking down the hallway, Boysen and Sgt. Kurtis Brown ran up to them and stopped. *Id.* at 24. Brown said that Smith had been in a fight, and he had to go to the Segregated Housing Unit (SHU). *Id.* Brown ordered Smith to turn around to be handcuffed. *Id.* Smith explained to Brown that he had not been in a fight, but been attacked, and that he and Kuku were going to health services. *Id.* Brown again ordered Smith to turn around. *Id.* Smith refused. *Id.*

At this point, Brown sprayed Smith with mace. *Id.* at 25. He used the whole can and sprayed Smith's head and entire torso. *Id.* Smith did not move; he only cried. *Id.* Brown ordered Boysen and Kuku to tackle Smith, which they did, pinning him to the ground. *Id.* Eventually, they got Smith up, and Kuku brought him to the West Hall holding cell. *Id.* at 26. Smith stayed in the cell for three hours without being treated for his various injuries or being decontaminated after being sprayed with mace. *Id.*

When Smith was taken to nurse Lonna Vink, he told her that his nose was broken, that his left ankle hurt and he could not walk, and that he had not been decontaminated. *Id.* at 8; Docket 59 at 2. She told Kuku that Smith was okay and could be taken to the SHU. Docket 1 at 8. There, he was finally decontaminated. *Id.* A nurse came and got blood samples from Smith to test against the blood on the correctional officers' shirts. *Id.* at 27. Brown came to the SHU, took pictures of Smith, and thanked Smith for getting him a new

3

shirt. *Id.* Smith could not sleep because his nose was still bleeding and he was still in pain. *Id.* at 8, 27. Prison officials would not give him pain medications. *Id.* The next morning Unit Manager Keith Ditmenson denied Smith's request for sick call and wrote him up for fighting another inmate. *Id.* at 8, 27.

**Medical Care**

After being in the SHU for five days, requesting medical care each day, Smith saw a nurse. *Id.* at 9. The nurse ordered x-rays of Smith's nose for that day and x-rays of his ankles for the next day. *Id.* On December 24, 2013, Smith was brought in to see Dr. Eugene Regier and Head Nurse Heather Bowers. *Id.* After looking at the x-rays of his nose, Dr. Regier told Smith that his nose was broken. *Id.* The ankle x-rays had been lost, and Dr. Regier told Bowers to reorder them. *Id.*

After ninety days, Smith was released from the SHU and saw Dr. Regier. *Id.* at 10. Dr. Regier told Bowers to set up an appointment for Smith with an Eyes, Ears, and Nose specialist. *Id.* Smith told Dr. Regier that his ankle had not been x-rayed and that he could barely walk on that ankle. *Id.* Dr. Regier said they would take one thing at a time. *Id.* He also gave Smith cortisone injections in his left knee, left shoulder, and left hip. *Id.*

When Smith went to specialist Dr. Marc Ellwein, Dr. Ellwein ordered that Smith's nose be reset, but the prison health services would not authorize the procedure because they declared it "nonemergent." *Id.* at 11. After a number of visits, Dr. Ellwein decided Smith needed surgery. On September 5, 2013, Dr. Ellwein wrote to Dr. Regier, telling him that Smith had a deviated nasal

septum, that it was a medical emergency, and that Smith was a surgical candidate. *Id.* at 13. Dr. Mary Carpenter, however, denied Smith the treatment. *Id.*

In December, Smith again saw Dr. Regier concerning his deviated septum. *Id.* Smith was sent back to Dr. Ellwein, who recommended surgery again. *Id.* at 13-14. On January 27, 2014, Smith saw a Dr. Todd, who recommended surgery right away. *Id.* at 14. Dr. Regier requested authorization for surgery, but Dr. Carpenter denied the request. *Id.* at 15.

During this time, Smith was having similar problems with his ankle treatment. He repeatedly told medical providers at the prison that he was suffering, but he did not receive what he believes was adequate treatment. Smith saw Dr. Watts from CORE Orthopedics on July 2, 2015, and Dr. Watts recommended surgery for Smith's left ankle. *Id.* at 21. This was denied by Dr. Carpenter. *Id.* In October, however, Smith had surgery on his ankle. Docket 1-1 at 14.

**Discipline**

The day after Smith was attacked by both his cellmate and the correctional officers, Ditmenson came to the SHU and told Smith he was writing him up for fighting another inmate. Docket 1 at 27. Smith was also written up for spitting blood at Brown. *Id.* at 29. The fighting write-up was dropped, but Smith was charged with a felony for spitting blood at Brown. *Id.* at 28, 34. Smith alleges that he was not allowed to take his spitting charge

before a Disciplinary Hearing Officer. *Id.* at 33. Ditmenson said that Smith had waived his right to the hearing, but Smith does not believe he did. *Id.*

On March 23 and 24, 2015, Smith was tried for spitting on Brown. *Id.* at 35. During the trial, both Kuku and Boysen testified that Smith did not spit on Brown. *Id.* Smith was acquitted by the jury. *Id.* at 36. The judge ordered the prison to drop the spitting write-up and put Smith back in medium custody instead of maximum custody, where he had been since he was attacked. *Id.* at 37. Smith has tried to get the prison to drop the write-ups, but they will not. *Id.* He has asked the judge in his criminal trial, Associate Warden Allcock, Associate Warden Troy Ponto, and his public defender for help, but to no avail. *Id.*

**Stair Order**

In October 2013, Smith was moved to a different tier in the prison and placed by the medical department on a medical shower order that he not use the stairs to get to the shower. *Id.* He was given numerous no-stair orders. *Id.* at 38. Bowers and Dr. Carpenter did not think Smith needed to use the medical showers, so they told his Unit Manager to force him to use the regular showers. *Id.* In June 2014, Dr. Regier ordered Bowers to tell Smith's unit manager to stop making Smith use the stairs, which she reluctantly did. *Id.* at 39. Smith was not given access to the medical showers for another 3 weeks. *Id.*

**Seroquel**

Smith alleges that he has had bipolar disorder his whole life, and has what he calls "highs" and "lows" that are uncontrollable and intense. *Id.* at 43.

6

He has been given a number of different medicines to treat his disorder while in prison. *Id.* The only one that helped was Seroquel. *Id.* In December 2014, Smith was taken off Seroquel by Dr. Carpenter because it was too expensive, even though he was stable while on the drug. *Id.* at 43-44.

**Coordinator Angela Steineke**

Steineke started working in West Hall, where Smith is housed, in January of 2015. Docket 1-1 at 1. Even though Smith had a no-stair order, Steineke would not allow him to have recreation time on the tier or use the medical showers. *Id.* In both instances, Smith had to use the stairs. *Id.* When Smith had to wear a cast after surgery, Steineke refused to give the orderly tape so Smith's cast could be taped for showers, and Smith had to get it from another prison official. *Id.*

Steineke read and interfered with Smith's legal mail. *Id.* at 2-3. If the inmates, including Smith, wrote things she does not approve of, Steineke challenged them. *Id.* at 3. In June of 2015, Smith gave Steineke a motion to mail to the court, but it was never sent. *Id.* Steineke told Smith that she sent it to the mail office, but the mail office said they did not receive it. *Id.* at 4.

Steineke did not like that inmates received indigent commissary and told them she did not like it. *Id.* at 5. Steineke started telling inmates that their medical orders had expired or were not in the computer, so they could not receive their commissary items. *Id.* at 6. When Smith went to check with health services, he learned that his orders were there; they had just been denied by

Steineke. *Id.* Steineke did this with dental commissary items until she was told to stop by the dental department. *Id.*

During a doctor's visit, Smith asked Dr. Watts to request the prison to order him work boots for his ankle. *Id.* at 11. Dr. Watts did this, and Smith was supposed to get the boots in July or August. *Id.* On July 22, Smith asked Bowers about the boots, but Bowers said she did not believe he needed them and that Steineke would not give them to him. *Id.* at 12. Smith then asked Dr. Regier about the boots. *Id.* Dr. Regier told Bowers to order the boots, but she did not. *Id.* at 12-13. Steineke told Smith he was not going to get the boots. *Id.* at 13. Ditmenson told Smith he would get the boots if Smith had a medical order. *Id.* A nurse told Smith she could not order the boots for him because of Bowers. *Id.*

The day after Smith had surgery on his ankle, he asked Dr. Regier about his boots. *Id.* at 14. Two months later, Ditmenson got Smith's boots, and even though Steineke refused to give them to Smith at first, eventually, Ditmenson gave them to Smith. *Id.* at 15. In total, it took six months for Smith to receive his boots. *Id.*

In November 2015, Smith ripped the sole of his shoe. *Id.* When he told Steineke, she told him to fill out a kite and give it to her. *Id.* at 16. He did, and when she did not respond to the kite, he wrote another one and put it in her mailbox. *Id.* He told Warden Robert Dooley about his shoe, and Dooley told him to tell Ditmenson. *Id.* When he told Ditmenson, Ditmenson told him to fill out another kite. *Id.* He filled out two more kites and gave them to Steineke. *Id.*

8

In his final kite, Smith alleged that he had turned in many kites. *Id.* at 16-17. Steineke called Smith into her office and told him to prove that he had turned in all those kites. *Id.* She then called him a liar and told him to go to hell. *Id.* at 17.

The next day, Smith gave another kite to the East Hall Coordinator. *Id.* When Smith was able to bring his grievance before prison officials, they agreed with him and told him he was entitled to a new pair of shoes. *Id.* When he showed Steineke the grievance, she attempted to take it and then told Smith he was never getting the new shoes. *Id.* at 17-18.

On December 10, 2015, Smith asked a prison official for help. *Id.* at 18. The official told Smith he would get the shoes. *Id.* The official talked with Steineke about the shoes, but afterwards, he told Smith that she would not give him the shoes. *Id.*

Throughout all of these issues with Steineke, Smith had difficulties with his grievances. As explained above, Steineke would not accept grievances concerning certain things. Steineke and Ditmenson also convinced other prison officials to refuse to accept his grievances. *Id.* at 9. Two coordinators in East Hall and a case worker refused Smith's grievances, apparently at the behest of Ditmenson and Steineke. *Id.* at 9, 10, 17.

## PROCEDURAL BACKGROUND

On January 25, 2016, Smith filed his complaint under § 1983. Docket 1. His complaint is split into two parts and is eighty-six pages long. Docket 1; Docket 1-1. Along with his complaint, he filed 286 pages of attachments.

Docket 1-2–1-10. The court stayed Smith's case because he had filed the same case in state court. Docket 14. The court ordered Smith to file notice when the state court case had ended. *Id.* Despite this, Smith continued to file motions, supplements, and letters, many with multiple attachments. Altogether, this constituted nearly seven-hundred pages of filings. The docket as a whole constitutes over 1,000 pages.

On January 5, 2017, Smith provided documentation showing that the state court proceeding was dismissed. Docket 48-1. Because Smith is incarcerated, his complaint must be screened under 28 U.S.C. § 1915A. Before he showed that the state court case had ended, however, Smith filed numerous motions to amend his complaint. It was unclear what constituted his complaint. Therefore, the court ordered Smith to either notify the court that he wished his proposed amended complaint (Docket 30-1) to constitute his complaint or file a new amended complaint. Docket 53. On February 3, 2017, Smith filed a letter stating that he wished Docket 30-1 to constitute his amended complaint. Docket 61 at 3.

## LEGAL STANDARD

The court must accept the well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014). Civil rights and pro se complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a pro se complaint must

10

contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985); *Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013). Civil rights complaints cannot be merely conclusory. *Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1993); Parker v. Porter, 221 F. App'x 481, 482 (8th Cir. 2007).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "If a plaintiff cannot make the requisite showing, dismissal is appropriate." *Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008); *Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985).

Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they are "(1) frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 1915A(b).

## DISCUSSION

## I.   Motion to Supplement

Smith moves to amend his complaint. Docket 30. He has partially satisfied Local Rule 15.1 as the court ordered, Docket 26, and provided a proposed amended complaint. *See* Docket 30-1. In his proposed amended complaint, Smith discusses a number of claims, most of which are not in his original complaint. Further, he refers to his original complaint as if the proposed amended complaint is intended to supplement, rather than replace,

11

his original complaint. Therefore, the court treats it as a motion to supplement his complaint.

### A.      Retaliation

In his proposed amended complaint, Smith raises a number of claims concerning his interactions with Mark Bidne, the paralegal at SDSP. He alleges that prison officials are pressuring Bidne to keep him from helping Smith. Docket 30-1 at 9. He alleges that prison officials will not allow him to visit Bidne. *Id.* at 10. Finally, he alleges that copies of his legal papers were taken from Bidne's office.[2] *Id.* Smith claims that this constitutes retaliation. *Id.*

To establish a retaliation claim, Smith must show "(1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Spencer v. Jackson Cty. Mo.*, 738 F.3d 907 (8th Cir. 2013) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)). Smith alleges that he was engaged in a protected activity, i.e. bringing a case in court. The adverse action he alleges is denial of access to Bidne and the taking of his legal papers. Smith also alleges this is done to stop him from pursuing his legal claims. Therefore, Smith states a claim of retaliation.

Smith does not explain who is responsible for these actions. He claims that Ditmenson "or someone else" is keeping him from visiting Bidne, but does

---

[2] Smith makes the same claim that his legal papers were taken out of Unit Manager Jessica Cook's office. Docket 1-1 at 27. Because Smith also does not allege who took the papers out of her office, the same analysis applies to both claims.

not mention any other defendants responsible for these alleged violations. Discovery has not been conducted, so it is reasonable that Smith does not know the identity of the defendants allegedly retaliating against him. Therefore, his retaliation claim may proceed in order to discover who committed these acts.

### B.   Order in Smith's State Civil Case

Smith complains that Judge John Pekas has not produced an order that Smith's state case has been closed. Docket 30-1 at 7-8. He alleges that Judge Pekas ordered Assistant Attorney General William H. Golden to prepare the order for Judge Pekas to sign. *Id.* at 7. To the extent Smith attempts to raise a claim based on these facts, his claim is dismissed. Aside from immunity issues, Smith fails to state a claim because he received the order he sought, he filed it in this case, and the stay was lifted. He was not harmed by the delay. Therefore, he fails to state a claim upon which relief may be granted, and his claim is dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### C.   Misconduct in Smith's State Criminal Case

Smith alleges claims of misconduct that occurred during his state trial for spitting on Brown. *Id.* at 8. He alleges that he has proof that "they Lied to a Grand Jury to get a[n] Indictment of a Felony charge that never happened, where I was Acquitted of all charges in Trial." *Id.* He does not allege that any specific defendant did this, only that "they" did it. He names Golden, who is an Assistant Attorney General, but he only mentions him in the section complaining about his state civil case. Because Smith fails to name a

13

defendant against whom this claim can be raised, he fails to state a claim upon which relief may be granted. Therefore, this claim is dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### D.   Psychiatric Care

Smith alleges that defendants failed to adequately respond to his suicide attempt. On June 20, 2016, Smith attempted to hang himself. Docket 30-1 at 13. Another prisoner spotted this and called a correctional officer. *Id.* The correctional officer stopped Smith and took him to a holding cell. *Id.* Smith was left in the holding cell for two hours without being treated or taken to see mental health professionals even though he told the correctional officer and Ditmenson that he needed help before he killed himself. *Id.*

The correctional officer told Smith that the mental health professionals did not want to see him "now or ever" and he could either go back to his cell or go to the SHU. *Id.* at 13-14. Smith went back to his cell. *Id.* at 14. When he went back, Ditmenson told him to kill himself. *Id.*

"It is well established that the Eighth Amendment prohibition on cruel and unusual punishment extends to protect prisoners from deliberate indifference to serious medical needs" and "that a risk of suicide by an inmate is a serious medical need." *Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). But, the defendant is only liable for the subsequent injury. *See Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 844 (1994)). Smith alleges that he came out of his depression the next day. Further, defendants' reaction was to put Smith in a holding cell and keep

14

him from committing suicide. Therefore, there was no injury. Smith fails to state a claim upon which relief may be granted, and his claim is dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## II.   Screening Smith's Complaint Under § 1915A

In his complaint, Smith raises certain claims explicitly, and the court construes his complaint to raise a number of further claims. Smith raises numerous claims concerning the inadequacy of the medical care he received after he was assaulted by defendants. Smith claims that defendants' used excessive force after he was attacked by his cellmate. Smith raises two claims that his punishment violated his due process rights. Smith claims that Steineke and Ditmenson violated his rights by refusing to accept his grievances. Finally, Smith raises numerous claims against Steineke.

### A.   Defendants

Smith names Darin Young, Bob Dooley, Judge John Pekas, Troy Ponto, Marty Jackley, Katie Dunn, Judge Robin J. Howwman, Douglas P. Barnett, David Watts, Dr. Todd, and Marc Ellwein as defendants. Docket 1 at 2-6. He does not, however, allege that these defendants violated his constitutional rights. Some of them are not even mentioned in his complaint. Smith fails to state a claim against these defendants. Therefore, his claims are dismissed for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### B.   Medical Care after Assault

Smith alleges that defendants were deliberately indifferent to his serious medical needs after he was assaulted. "[A] prison official who is deliberately indifferent to the medical needs of a prisoner violates the prisoner's constitutional rights." *Letterman v. Does*, 789 F.3d 856, 861 (8th Cir. 2015). To state an Eighth Amendment claim, Smith must show "a substantial risk of serious harm," and that "the prison official was deliberately indifferent to that risk of harm . . . ." *Id.* at 861-62 (citing *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006)).

"The deliberate indifference element has two components: an actor must 'know[] of and disregard[] an excessive risk to inmate health or safety.' " *Id.* at 862 (quoting *Farmer*, 511 U.S. at 837). "Plaintiffs must first demonstrate that defendants knew of the substantial risk of serious harm to the victim." *Id.* (quoting *Jackson v. Everett*, 140 F.3d 1149, 1152 (8th Cir. 1998)). To show this, plaintiffs do not need to show actual knowledge; the court "can infer knowledge if the risk was obvious." *Id.* It is enough to show that the defendant "had been exposed to information concerning the risk and thus 'must have known' about it." *Id.* (quoting *Farmer*, 511 U.S. at 842).

"The plaintiff must show the official 'knew that their conduct was inappropriate in light of' the risk to the prisoner." *Id.* (quoting *Krout v. Goemmer*, 583 F.3d 557, 567 (8th Cir. 2009)). "Knew" in this context means more than negligence and is "akin to the criminal rule of 'recklessness.' " *Id.* (quoting *Farmer*, 511 U.S. at 839-40). "Generally, the actor manifests deliberate indifference by 'intentionally denying or delaying access to medical

16

care, or intentionally interfering with treatment or medication that has been prescribed.' " *Id.* (quoting *Krout*, 583 F.3d at 567).

Smith does not explain his claims fully or explain which defendant each claim is being raised against. As is discussed in further detail below, after construing his complaint liberally, the court finds that Smith raises Eighth Amendment claims against Dr. Carpenter, Steineke, Ditmenson, Bowers, Dr. Regier, and Kuku. Smith fails to state claims against Steineke, Dr. Regier, and Kuku.

### 1.    Dr. Carpenter

Smith raises numerous Eighth Amendment claims against Dr. Carpenter. He claims that she denied a request to reset his nose, even though a specialist requested the treatment. Docket 1 at 11. Smith had to have surgery because of this delay. *Id.* Dr. Carpenter twice denied this surgery, which Dr. Regier and Dr. Ellwein believed was necessary and for which they requested authorization. *Id.* at 13, 15. Dr. Carpenter also denied a request for surgery on Smith's ankle that had been recommended by Dr. Watts. *Id.* at 21.

Each of these injuries presented a substantial risk of harm, which is shown by the doctors' findings. Further, Dr. Carpenter knew of this risk because the other doctors requested that she authorize treatment. She disregarded these risks by denying treatment. Therefore, Smith states a claim that Dr. Carpenter was deliberately indifferent by denying him various treatments.

17

Dr. Carpenter also took Smith off of Seroquel because it was too expensive, even though it was the only medicine that stabilized him. *Id.* at 43. The risk of untreated bipolar disorder would have been clear to Dr. Carpenter. She also would have been aware that Smith was diagnosed with bipolar disorder because the prison had treated him in the past and was treating him at that time. By taking Smith off of Seroquel, Dr. Carpenter disregarded this risk.

It is true that medical claims based solely on a disagreement with the course of treatment do not rise to the level of a constitutional violation. *Meuir v. Greene Cty. Jail Emps.*, 487 F.3d 1115, 1118–19 (8th Cir. 2007); *Wallace v. Bland*, 592 F. App'x 540, 541 (8th Cir. 2015). At this point, however, Smith's allegations are sufficient. Therefore, Smith states claims that Dr. Carpenter was deliberately indifferent by taking him off of Seroquel.

### 2.    Ditmenson

Smith raises an Eighth Amendment claim against Ditmenson, alleging that Ditmenson violated his rights by turning him down for sick call for five days after he was attacked. Docket 1 at 8. Smith's injuries were substantial (two of them led to surgeries). Further, the risk was clear to Ditmenson. Smith was visibly injured, he was bleeding, and he requested medical treatment from Ditmenson, telling him about his injuries. Ditmenson disregarded this risk by refusing to allow Smith to get medical attention. Therefore, Smith states a claim that Ditmenson was deliberately indifferent by denying Smith's sick call requests.

18

### 3.    Work Boots

Smith raises an Eighth Amendment claim against Steineke and Bowers for denying him work boots. The court also construes Smith's complaint as alleging that Ditmenson violated his rights by denying him work boots.

### a.    Bowers

Smith claims that Bowers denied him work boots. He alleges that she told him that she believed he did not need work boots. Docket 1-1 at 12. This occurred after Dr. Watts told the prison that Smith needed the work boots. Three months later, Dr. Regier also ordered Bowers to get Smith boots, but she did not. *Id.* at 12-13. Finally, a nurse told Smith that she could not get the boots for him because of Bowers. *Id.* at 13.

Smith was in medical need of the work boots. Bowers was aware of this medical need because both Dr. Watts and Dr. Regier had told her to provide them to Smith because of his ankle injuries. Still, it took Smith six months to get the boots. Therefore, Smith states a claim that Bowers was deliberately indifferent by denying Smith work boots.

### b.    Ditmenson and Steineke

Smith raises the same claim concerning his work boots against Ditmenson and Steineke. Ditmenson told Smith that he would get him the work boots if Smith had a medical order. Docket 1-1 at 13. Neither Ditmenson nor Steineke are medical professionals, and it is not unconstitutional for them to seek the direction of medical professionals. From the complaint, it does not appear that they could get the boots without the medical order. *See Meloy v.*

19

*Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002) (prison officials cannot substitute their judgment for medical professional's prescription). Further, Ditmenson ended up taking Smith's boot size and getting him the boots. Therefore, Smith fails to state a claim that Ditmenson and Steineke were deliberately indifferent in relation to his work boots.

### 4. Dr. Regier

The court construes Smith's complaint as raising a deliberate indifference claim against Dr. Regier. To the extent that Smith does raise such a claim, the claim fails. Dr. Regier was not deliberately indifferent to Smith's medical needs because at no point did Dr. Regier deliberately disregard any of those needs. Dr. Regier treated Smith, indeed he requested authorization for Smith's surgeries.

The only time the complaint alleges that Dr. Regier did not treat Smith is when he tells Smith to take things "one at a time" in regard to his multiple health problems. Docket 1 at 10. During this visit, Dr. Regier may not have treated Smith's ankle directly, but he did order an x-ray of Smith's ankle and gave him cortisone injections. *Id.* at 9, 10. Therefore, Smith fails to state a claim that Dr. Regier was deliberately indifferent to his medical needs.

### 5. Kuku

The court construes Smith's complaint as raising a deliberate indifference claim against Kuku. To the extent Smith does raise such a claim, the claim fails. Kuku brought Smith to Nurse Vink and then the SHU without ever having his injuries treated or having him decontaminated after being

20

sprayed with mace. *Id.* at 8. When Kuku took Smith to Vink, however, she told him to take Smith to the SHU. *Id.* As discussed above, Kuku may rely on Vink's medical assessment. Therefore, Smith fails to state a claim that Kuku was deliberately indifferent to his medical needs.

### C.      Excessive Force

Smith alleges that Brown, Boysen, and Kuku violated his rights by using excessive force against him. "In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989). The Eighth Circuit Court of Appeals has recognized different scenarios in which an excessive force claim may arise, differentiating them by looking at when in the criminal process the force was used. Where the excessive force claim arises *after* conviction, the claim invokes the Eighth Amendment. *Wilson v. Spain*, 209 F.3d 713, 715 (8th Cir. 2000); *see also Graham*, 490 U.S. at 398. Therefore, Smith's claim is brought under the Eighth Amendment.

The Eighth Amendment's prohibition on cruel and unusual punishment protects prisoners from the " 'unnecessary and wanton infliction of pain.' " *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). "What is necessary to establish an 'unnecessary and wanton infliction of pain' . . . varies according to the nature of the alleged constitutional violation." *Id.* at 6 (quoting *Whitley*, 475 U.S. at 320). To determine whether prison officials engaged in the unnecessary and wanton infliction of pain when

21

resolving a prison disturbance, the court considers "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 7 (citing *Whitley*, 475 U.S. at 320–21).

Smith alleges that Brown sprayed him with mace while he was standing still in the hallway of the prison. Boysen and Kuku then tackled Smith on Brown's order. Smith alleges that Brown also attacked him and pinned him to the ground after he was tackled. Defendants used a high level of force.

Smith has pleaded sufficient facts to show that the force was not applied in a good faith effort to maintain or restore discipline. According to Smith, he was calmly explaining to Brown that he had not been in a fight with his cellmate but been attacked *by* him. This is supported by the fact that Kuku apparently believed Smith and was bringing him to receive medical treatment before the attack. Smith also did not react violently to being sprayed with mace. Assuming Smith's facts as pleaded are true, that makes defendants' decision to tackle him and pin him to the ground unlikely to be a good faith effort to maintain discipline. Therefore, Smith states an excessive force claim against Brown, Boysen, and Kuku.

### D.   Due Process

Smith alleges that Ditmenson violated his right to due process by refusing to let him challenge the charge of spitting on a correctional officer. Docket 1-1 at 26. Smith alleges in his complaint that he did not waive his right to take the charge to a disciplinary hearing officer. Docket 1 at 33. Throughout

his complaint, Smith also complains that defendants have not dismissed his write-up for spitting on Brown even though he was acquitted of the charge. The court construes these as two claims, one challenging his punishment without a hearing and the other challenging his reclassification as a maximum security prisoner.

### 1.    Hearing for Spitting on an Officer

Smith claims he should have been given a hearing concerning his charge of spitting on an officer. He claims the lack of a hearing violated his Due Process rights. In order to prevail on this claim, Smith " 'must first demonstrate that he was deprived of life, liberty, or property by government action.' " *Orr v. Larkins*, 610 F.3d 1032, 1033 (8th Cir. 2010) (quoting *Phillips v. Norris*, 320 F.3d 844, 846 (8th Cir. 2003). "To show he was deprived of a protected liberty interest, [Smith] must identify conditions that impose 'atypical or significant hardship . . . in relation to the ordinary incidents of prison life.' " *Id.* (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

The Eighth Circuit Court of Appeals has "consistently held that a demotion to segregation, even without cause, is not itself an atypical and significant hardship." *Id.* (quoting *Phillips*, 320 F.3d at 847). Smith did not have a liberty interest in avoiding the punishment he received. Therefore, Smith's lack of a hearing did not violate his rights under the Due Process Clause. Smith fails to state a Due Process claim upon which relief may be granted, and his claim is dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 2.   Reclassification

Smith claims that he should not be a maximum security prisoner. Before he was charged with spitting on an officer, Smith was a medium security prisoner. A change in the condition of confinement implicates a liberty interest only when the action creates deprivations "which work such major disruptions in a prisoner's environment and life that they present dramatic departures from the basic conditions and ordinary incidents of prison sentences." *Moorman v. Thalacker*, 83 F.3d 970, 972 (8th Cir. 1996).

"[T]he Due Process Clause does not give an inmate a liberty interest in remaining in the general population." *Seltzer-Bey v. Delo*, 66 F.3d 961, 964 (8th Cir. 1995). There is no liberty interest in assignment to any particular prison or unit of a prison. *Moorman*, 83 F.3d at 973; *Carney v. Houston*, 33 F.3d 893, 894 (8th Cir. 1994). Prisoners do "not have a constitutional right to a particular prison . . . classification." *Sanders v. Norris*, 153 F. App'x. 403, 404 (8th Cir. 2005). "[C]onstitutionally speaking, assignments are discretionary, so long as they are not done for prohibited or invidious reasons and do not rise to independent constitutional violations on their own weight." *Moorman*, 83 F.3d at 973. Therefore, Smith's re-classification as a maximum security prisoner does not give rise to a liberty interest.

The Supreme Court has held that the conditions of a maximum security facility may be so onerous that classification that leads to incarceration in this facility gives rise to a liberty interest under the Due Process Clause. *Wilkinson v. Austin*, 545 U.S. 209 (2005). The Eighth Circuit has suggested that being

confined in maximum security conditions for an indefinite period of time may result in an atypical and significant hardship, giving rise to a liberty interest. *See Portley-El v. Brill*, 288 F.3d 1063, 1065-66 (8th Cir. 2002). Neither Smith's complaint nor any of his filings explain why his maximum security status is so onerous or indefinite that it gives rise to a liberty interest. Therefore, Smith fails to state a due process claim upon which relief may be granted concerning his re-classification, and his claim is dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### E.    Grievances

The court construes Smith's complaint as alleging that Steineke and Ditmenson violated his constitutional rights by denying him access to the prison grievance system. Steineke and Ditmenson refused to accept Smith's grievances a number of times. They also told other prison staff to not accept his grievances, including the coordinators in East Hall and a case worker.

The Eighth Circuit Court of Appeals has held that prisoners fail to state a claim by alleging prison officials failed to process their grievances, *see e.g. Hodgson v. Fabian*, 378 F. App'x 592, 594 (8th Cir. 2010); *Day v. Corr. Med. Servs.*, 281 F. App'x 624 (8th Cir. 2008), and that the failure to investigate grievances does not rise to a constitutional violation. *King v. Houston*, 556 F. App'x 561, 563 (8th Cir. 2014). Other districts in the Eighth Circuit have dismissed similar claims. *E.g. Townsend v. Singleton*, No. 4:12-CV-04072, 2013 WL 501441, at *3 (W.D. Ark. Jan. 3, 2013), report and recommendation adopted, No. 12-CV-4072, 2013 WL 501112 (W.D. Ark. Feb. 11, 2013); *Webb v.*

*Smartwood*, No. 07-4017-CV-C-NKL, 2009 WL 2606237, at *5 (W.D. Mo. Aug. 21, 2009). Therefore, Steineke and Ditmenson did not violate Smith's rights by refusing to accept his grievance.

The grievance procedure does affect an inmate's right to access the courts because an "inmate must exhaust all available administrative remedies before bringing a § 1983 suit." *Porter v. Sturm*, 781 F.3d 448, 451 (8th Cir. 2015) (citing 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 211 (2007); *Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir. 2014)). Therefore, a prison official's refusal to accept a grievance could deny a prisoner access to the court. Here, however, Smith has brought his claims in both state and federal court; he has not been denied access in any way.

Smith admits in his complaint that he has failed to exhaust some of his claims through the prison grievance process. Docket 1-1 at 1. He alleges this is due to Steineke and Ditmenson's refusal to accept his grievances and their instructions to other prison officials not to accept them. Steineke and Ditmenson's actions may excuse Smith's failure to exhaust his other claims. The refusals themselves, however, are not grounds for a claim under § 1983. Therefore, Smith has failed to state a claim upon which relief may be granted concerning the refusal to accept his grievances, and his claim is dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## F.    Claims Against Steineke

Smith raises a number of claims against Steineke. He also makes general allegations throughout his complaint that he does not like how Steineke

26

operates in her position as West Hall Coordinator. The court construes Smith's complaint as raising claims concerning legal mail and indigent commissary.

### 1.   Legal Mail

An inmate's privileged mail "may not be opened for inspections for contraband except in the presence of the prisoner." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1037 (8th Cir. 2012) (quoting *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997). "[A]n 'isolated incident, without any evidence of improper motive or resulting interference with [the inmate's] right to counsel or to access to the courts, does not give rise to a constitutional violation.' " *Id.* at 430 (quoting *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990)).

Smith alleges that Steineke routinely opens his legal mail outside of his presence. He also alleges numerous instances in which Steineke made it clear that she was opening his legal mail deliberately, in order to censor the mail. Therefore, what he has alleged is not an isolated incident. The court finds that Smith states a First Amendment claim that his legal mail was opened outside of his presence. *See Foster v. Helling*, 210 F.3d 378 (8th Cir. 2000) (allegations that prison stated that prisoner's legal mail could be opened outside of prisoner's presence stated a First Amendment claim).

### 2.   Indigent Commissary

Smith claims that Steineke violated his constitutional rights by denying him indigent commissary, including medical and dental items. He alleges that she does not like that inmates receive indigent commissary and makes her

feelings clear. He also alleges that other prison employees have objected to Steineke's actions.

" '[I]nmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time.' " *Beaulieu v. Ludeman*, 690 F.3d 1017, 1045 (8th Cir. 2012) (quoting *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989)). "A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element." *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004). "The defendant's conduct must objectively rise to the level of a constitutional violation, by depriving the plaintiff of the 'minimal civilized measure of life's necessities[.]' " *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 342 (1981)). "The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner." *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1977)).

Smith does not allege that he is being denied the necessities of life. While he is being denied medical commissary, he alleges that it is only being denied for a certain amount of time. Once he went around Steineke, he was able to receive his commissary. Steineke's actions, as alleged by Smith, are unsavory but not unconstitutional.  In *Howard*, the conditions the inmates lived in "were inconsistent with any standard of decency, not mere inconveniences." *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989) (citation and quotation marks omitted). Here, Smith alleges conditions that, while unpleasant, are mere inconveniences. *See also Williams v. Delo*, 49 F.3d 442, 443 (8th Cir. 1995)

(inmate living four days without clothing, bedding, or access to water did not violate the Eighth Amendment because inmates have no absolute right to these things and the inmate did not suffer any injuries as a result of this treatment). Therefore, Smith fails to state a claim upon which relief may be granted concerning his indigent commissary, and his claim is dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### G.    Americans with Disabilities Act and Rehabilitation Act Claims

Smith alleges that he is protected under the ADA and the RA. Docket 1-1 at 30. He does not allege any facts specific to this claim. To state a claim under the ADA or the RA, Smith must allege that he was denied the benefits of a program or activity because of his disability. *See* 42 U.S.C. § 12132; *Mason v. Corr. Med. Servs., Inc.*, 559 F.3d 880, 886 (8th Cir. 2009); 29 U.S.C. § 794(a); *Turner v. Mull*, 784 F.3d 485, 494 (8th Cir. 2015). Smith has failed to make this allegation. Therefore, he fails to state an ADA or RA claim upon which relief may be granted, and his claims are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### III.   Motion For Leave to File an Amended Complaint

Smith filed a motion entitled "Proposed Plaintiff's Motion for Leave to File an Amended Complaint." Docket 59.[3] Although he cites Local Rule 15(a), he does not follow the rule. The filing seeks to add Lonna Vink, Denny Kaemingk, David Lentsch, William H. Golden, and David Stephen as defendants. The court

---

[3] Docket 62 is the same motion, and the analysis applies to both motions. Because the motions are the same, Docket 62 is denied as moot.

grants Smith's motion to amend.[4] The claims Smith raises in his amended complaint must also be screened under § 1915A.

### A.    Lonna Vink

Smith alleges that Vink was the nurse in charge the night he was brought to health services after being maced and beaten. Docket 59 at 2. He alleges that Vink said there was nothing wrong with Smith and ordered Kuku to send him to the SHU without treatment. *Id.* Using the Eighth Amendment deliberate indifference framework outlined above, the court finds that Smith states a claim against Vink. Smith alleges that he was visibly injured, and the record shows that his injuries were serious. Vink deliberately disregarded these injuries when she told Kuku to take Smith to the SHU without treatment. Therefore, Smith states a claim against Vink.

### B.    Denny Kaemingk

Kaemingk is the Secretary of Corrections for the State of South Dakota. *Id.* Smith alleges that Kaemingk knows that Smith was acquitted of spitting blood on Brown, but he will not dismiss Smith's write-up for spitting on Brown. *Id.* This decision is what is keeping Smith on maximum security status. *Id.* As discussed above, Smith fails to state a claim that his punishment or re-classification violated his constitutional rights. Therefore, Smith fails to state a claim upon which relief may be granted as to Kaemingk, and Kaemingk is dismissed as a defendant.

---

[4] As with his previous motion, the court treats this as allegations supplementing, rather than replacing Smith's original complaint. *See Kiir v. N.D. Pub. Health*, 651 F. App'x 567, 568 (8th Cir. 2016).

30

### C.   David Lentsch

Smith alleges that David Lentsch took him off of the medical no stair order. *Id.* at 2-3. In his original complaint, Smith alleged that after Dr. Regier (via Bowers) told Lentsch to put Smith back on a medical no stair order, he did. Docket 1 at 39. But, Smith alleges that Lentsch waited an extra twenty days to do so. He does not, however, explain how this twenty day period violated his constitutional rights. Therefore, Smith fails to state a claim upon which relief may be granted as to Lentsch, and Lentsch is dismissed as a defendant.

### D.   William H. Golden

Smith alleges that Golden represented the state in his civil rights case in state court. Docket 59 at 3. Smith makes no allegations against Golden. Therefore, Smith fails to state a claim upon which relief may be granted as to Golden, and Golden is dismissed as a defendant.

### E.   David Stephan

Smith alleges that Stephan investigated Smith's charge for spitting on Brown. *Id.* at 3. He alleges that Stephan created a "synopsis" for the Attorney General's office, which was used to indict Smith for spitting on Brown. The court construes Smith's allegations against Stephan as a violation of the Fourteenth Amendment's Due Process Clause.

"Intentionally or recklessly failing to investigate other leads or manufacturing false evidence may shock the conscience and can violate the Fourteenth Amendment's due process clause." *Livers v. Schenck*, 700 F.3d 340, 351 (8th Cir. 2012). Although "[n]egligence and even gross negligence is not

31

enough because the state action must be 'truly egregious and extraordinary' to shock the conscience, and so severe as to amount to 'brutal and inhumane abuse of official power,' " it is improper to dismiss Smith's claim at this point. *Id.* (quoting *Winslow v. Smith*, 696 F.3d 716, 735–36 (8th Cir. 2012)). Between his complaint and his amendment, Smith states a claim that Stephan violated his rights under the Due Process Clause.

## IV.   Motion for Recusal and Writ of Coram Nobis and Writ of Certiorari

Smith filed a motion requesting recusal. Docket 63. In his motion, he argues that the court is biased against him because his motions were dismissed and another case he has filed was dismissed. *Id.* at 2, 5. He also cites a number of unrelated rules and summarizes both cases. *Id.* at 3-4.

"A judge must recuse from 'any proceeding in which [the judge's] impartiality might reasonably be questioned.' " *United States v. Melton*, 738 F.3d 903, 905 (8th Cir. 2013) (quoting 28 U.S.C. § 455(a)). Under § 455(a), "the question is 'whether the judge's impartiality might reasonably be questioned by the average person on the street who knows all the relevant facts of a case.' " *Id.* (quoting *Moran v. Clarke*, 296 F.3d 638, 648 (8th Cir. 2002)). "When a party seeks to establish bias or prejudice from court conduct, the party must show 'that the judge had a disposition so extreme as to display clear inability to render fair judgment.' " *Id.* (quoting *United States v. Denton*, 434 F.3d 1104, 1111 (8th Cir. 2006)).

Smith does not explain why the court's impartiality could be reasonably questioned. He also does not show any evidence of bias or prejudice, let alone

the high standard set out by the Eighth Circuit Court of Appeals. His main complaint is that his motions were denied. These motions were not denied because of bias but because Smith sought relief that he was not entitled to and did not follow the rules of procedure. Some of the motions were also denied because they were unintelligible to a point that the court could not even construe his motions and claims liberally enough to understand what he sought. They were not denied because the court held Smith to a standard higher than his pro se status required. Therefore, his motion to recuse is denied.

Smith also complains that the documents attached to his motions are now lost. This is not so. His motions and their attachments have been filed on the case docket. Smith also mentions writs of coram nobis and certiorari, but does not explain how they are applicable here. Therefore, to the extent he seeks relief under those writs, they are denied.

## CONCLUSION

A number of claims survive from Smith's original complaint: that Dr. Carpenter violated Smith's Eighth Amendment rights by denying him medical treatment for his injuries from the assault and taking him off of Seroquel, that Ditmenson violated Smith's Eighth Amendment rights by denying him medical care after the assault, that Bowers violated Smith's Eighth Amendment rights by denying him work boots, and that Steineke violated his First Amendment rights by denying Smith's legal mail. The remainder of his original complaint is dismissed without prejudice.

In his motion to amend, which the court construes as a motion to supplement, Smith states a claim of retaliation. Because it is unknown who committed the acts involved in this claim, Smith is permitted to proceed with this claim in order to discover the identity of those parties. The remainder of his motion to supplement is dismissed without prejudice.

Two of the claims in Smith's Motion for Leave to File an Amended Complaint survive screening: that Vink violated Smith's Eighth Amendment rights by denying him medical care after the assault and that Stephan violated Smith's rights under the Due Process Clause by investigating Smith for spitting on Brown. The remainder of his motion for leave to amend is dismissed without prejudice.

Thus, it is ORDERED

1.    Smith's motion to supplement (Docket 30) is granted.

2.    Smith's motion for leave to file an amended complaint (Docket 59) is granted.

3.    Smith's motion for leave to file an amended complaint (Docket 62) is denied as moot.

4.    Smith's motion for recusal (Docket 63) is denied.

5.    Smith fails to state a claim against Darin Young, Bob Dooley, Judge John Pekas, Troy Ponto, Marty Jackley, Dr. Eugene Regier, Katie Dunn, Judge Robin J. Houwman, Douglas P. Barnett, Dr. David Watts, Core Orthopedics Avera, Dr. Todd, Dr. Marc Ellwein, Midwest ENT, Denny Kaemingk, David Lentsch, and William H.

34

Golden. These defendants are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

6.   The Clerk shall send blank summons forms to Smith so that he may cause the summons and complaint to be served upon the remaining defendants.

7.   The United States Marshal shall serve a copy of the complaint (Docket 1; Docket 1-1; Docket 30-1; Docket 59), summons, and this order upon defendants Dr. Carpenter, Ditmenson, Bowers, Brown, Boysen, Kuku, Steineke, Vink, and Stephan as directed by Smith. All costs of service shall be advanced by the United States.

8.   Defendants will serve and file an answer or responsive pleading to the remaining claims in the complaint on or before 21 days following the date of service.

9.   Smith will serve upon defendants, or, if appearance has been entered by counsel, upon their counsel, a copy of every further pleading or other document submitted for consideration by the court. He will include with the original paper to be filed with the clerk of court a certificate stating the date and that a true and correct copy of any document was mailed to defendants or their counsel.

35

10.     Smith will keep the court informed of his current address at all times.

All parties are bound by the Federal Rules of Civil Procedure and by the

court's Local Rules while this case is pending.

Dated March 3, 2017.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE